APPEAL OF TAMMY M. SUTTON

(New Hampshire Compensation Appeals Board)

September 30, 1996

*Leslie H. Johnson*, of Center Sandwich, by brief and orally, for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Patrick C. McHugh* on the brief and orally), for the respondent, Lucas Industries, Inc.

BROCK, C.J. The petitioner, Tammy M. Sutton, appeals the decision of the New Hampshire Compensation Appeals Board (board) denying her request for medical benefits for psychological counseling following a work-related injury. We affirm.

The parties do not dispute the following facts. In 1992, the petitioner was employed by respondent Lucas Industries, Inc. In April 1992, she touched a door handle upon which a lubricant or glue had been sprayed and subsequently touched her left eye. After she

felt a painful burning sensation in her eye, the petitioner sought treatment at a local emergency room. She received workers' compensation benefits for this injury.

Approximately one month after the accident, the petitioner began psychological counseling with Michele Brannan, a certified mental health counselor. The petitioner complained of being frightened of people approaching her from the left, of blurred vision in her left eye, and of being unable to be close or affectionate with others; she attributed each of these symptoms to the eye injury. Brannan diagnosed the petitioner with post-traumatic stress disorder (PTSD) and began treating her accordingly. Whether these counseling sessions should be covered by workers' compensation is the issue on appeal.

The respondent referred the petitioner to Dr. Robert Weiner for an independent psychiatric evaluation. Dr. Weiner stated that the petitioner's symptoms were not caused by the eye injury, but rather by "unresolved emotional issues." Following a hearing at which the petitioner, Brannan, and Dr. Weiner testified, the board ruled that the petitioner did "not [meet] her burden of proof that the disputed medical treatments were reasonable and necessary with regard to her [eye] injury."

In making its decision, the board relied on Dr. Weiner's testimony. Dr. Weiner testified that an incident like the petitioner's eye injury could not be the precipitating incident for PTSD:

> [PTSD] is a mental illness. It is a psychiatric disorder. It requires that a person has experienced something outside of any normal life experience, something so horrible that they have been unable to bring it into their mental life. For example, war combat, concentration camp experiences, natural disasters like hurricanes, earthquakes, some people who have experienced rape, murder. This kind of horrible experience. Not all people who go through such an experience would develop [PTSD] but in order to develop such an illness, the individual must have had that kind of awful experience and because they are unable to bring it into their mental life, they can't talk about it.

Dr. Weiner concluded that, although the petitioner might suffer from some psychological problems, she did not suffer from PTSD and any treatment for PTSD was inappropriate. He also opined that her psychological problems were unrelated to the eye injury, reiterating the position he took in his evaluation that the petitioner's "anxiety and depression are not caused by the industrial injury."

The board concluded:

> [A]ccording to all objective testing there is no physical problem with the claimant's eye. The Board finds that the "stress" of her injury did not give rise to treatments of [PTSD]. The Board notes the fact the claimant suffers from some emotional problems which could require medical attention, however, her [eye] injury . . . is not related to said treatments in question.

The petitioner's primary arguments on appeal are that the board decision is unsupported by the evidence and that the board erred in limiting her ability to cross-examine Dr. Weiner at the hearing.

■■ The petitioner first argues that the board's decision is unsupported by the evidence. Pursuant to statute, we will affirm the board's decision unless the petitioner can demonstrate by a preponderance of evidence that it is "clearly unreasonable or unlawful." RSA 541:13 (1974). In making our review of the board's factual conclusions, "[o]ur task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." *Appeal of Stetson*, 138 N.H. 293, 296, 639 A.2d 245, 248 (1994) (citations omitted); *see* RSA 541:13. At each of her hearings, the burden was on the petitioner to demonstrate that her need for psychological counseling was a result of her eye injury. *See Tzimas v. Coiffures by Michael*, 135 N.H. 498, 500, 606 A.2d 1082, 1083 (1992). She was required to "prove legal causation, that is, that her injury is work-connected, and medical causation, that is, that her disability was actually caused by the work-related event." *Id.* (quotation and brackets omitted); *see Appeal of Briggs*, 138 N.H. 623, 628, 645 A.2d 655, 659 (1994).

■ The petitioner first argues that insufficient evidence supported the board's ruling, asserting that Dr. Weiner's opinion had "no basis in fact." We reject this argument, which essentially challenges Dr. Weiner's statement that the petitioner's emotional problems stem from unresolved family issues, as opposed to stemming from the eye injury. The board did not adopt this statement in its ruling, nor need it have. The board's operative finding was that the petitioner's emotional problems were unrelated to her eye injury, which was supported by Dr. Weiner's testimony. The respondent bore no obligation to demonstrate some alternative cause of the petitioner's problem. *See Appeal of Stetson*, 138 N.H. at 297, 639 A.2d at 248 (respondent "need not prove where or how the injury claimed actually occurred").

The board's conclusion that the petitioner's psychological ailments are unrelated to her eye injury is supported by ample competent evidence in the record. *See id.* at 296, 639 A.2d at 248. Although Brannan, the petitioner's treating mental health worker, offered testimony that conflicted with the board's decision, the board was free to reject this testimony in favor of the testimony of Dr. Weiner. *See Appeal of Gamas*, 138 N.H. 487, 490–91, 642 A.2d 925, 927 (1994). "When faced with conflicting expert testimony, as here, factfinders are free to disregard or accept, in whole or in part, that testimony." *Id.* The petitioner has failed to meet her burden of demonstrating that this finding lacks evidentiary support or is tainted by legal error. *See id.* at 491, 642 A.2d at 927–28. Because we affirm the board's decision on this ground, we need not address whether treatment for PTSD under these circumstances was "reasonable" as required by RSA 281-A:23, I (Supp. 1995). *See Appeal of Levesque*, 136 N.H. 211, 213–14, 612 A.2d 1333, 1334 (1992).

The petitioner next contends that the board erred in limiting her ability to cross-examine Dr. Weiner at the hearing. As we have stated, Dr. Weiner testified that PTSD *only* arises after a very serious traumatic event such as "war combat, concentration camp experiences, natural disasters like hurricanes, earthquakes, . . . rape, [or] murder." On cross-examination Dr. Weiner testified that he did not remember treating anyone for PTSD who had suffered a traumatic event that was something less serious than these examples. He testified to this after petitioner's counsel indicated that Dr. Weiner had testified in some other case that a workers' compensation claimant suffered from PTSD where the precipitating event was an accusation of perjury. Counsel for the respondent sought to cut off questioning on this issue, and the board agreed, on relevance grounds and on the ground that the petitioner relied solely on her counsel's recollection of the case to support the questioning.

■■ Although the rules of evidence do not apply in proceedings before the board, the board "may exclude irrelevant, immaterial or unduly repetitious evidence." RSA 541-A:18, II (Supp. 1993) (now codified at RSA 541-A:33, II (Supp. 1995)); *see* N.H. ADMIN. RULES, Lab 206.05(d). In any proceeding, "cross-examination, almost by definition, is a review of direct examination in order to determine the veracity, accuracy and depth of knowledge of the witness." *Petition of Betty Sprague*, 132 N.H. 250, 258, 564 A.2d 829, 834 (1989). The scope of cross-examination falls within the board's discretion, *id.* at 260, 564 A.2d at 835, and cross-examination must be allowed "to the extent necessary for a full and true disclosure of the facts," *id.* at 258, 564 A.2d at 834. *See* RSA 541-A:18, IV (Supp.

1993) (now codified at RSA 541-A:33, IV (Supp. 1995)); *Appeal of Kelleher*, 124 N.H. 274, 278–79, 469 A.2d 1322, 1325 (1983).

The petitioner argues that further cross-examination about the other case would have directly contradicted Dr. Weiner's testimony that it was impossible to have a PTSD diagnosis except under certain circumstances, and thus she would have damaged Dr. Weiner's credibility. Dr. Weiner had testified, responding to hypothetical questioning, that he did not recall making such a diagnosis, and that if he did make such a diagnosis, "maybe [he] made a mistake." In view of the fact that no offer of proof was made to substantiate the further proposed cross-examination, we conclude that the board's denial of further cross-examination did not diminish the full and fair disclosure of the facts of this case. *See Petition of Betty Sprague*, 132 N.H. at 259–60, 564 A.2d at 835.

*Affirmed.*

All concurred.